## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | | |
|---|---|---|
| **NTP, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No.:** $3:10CV470 (JRS)$ |
| | ) | |
| **v.** | ) | |
| | ) | **Jury Trial Demanded** |
| **MICROSOFT CORPORATION** | ) | |
| | ) | |
| **Defendant.** | ) | |

### COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff NTP, Inc. ("NTP" or "Plaintiff"), by and through its attorneys, hereby demands a jury trial and complains of Defendant, Microsoft Corporation ("Microsoft" or "Defendant"), as follows:

### A.    Nature of the Action

1.   This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 271 *et seq.*, to enjoin infringement and obtain damages resulting from Defendant's unauthorized manufacture, use, sale, offer to sell and/or importation into the United States certain products, methods, processes, services and/or systems that infringe one or more claims of United States Patent No. 5,436,960 (the "'960 Patent") (attached as Exhibit A) entitled "Electronic Mail System with RF Communications to Mobile Processors and Method of Operation Thereof"; United States Patent No. 5,438,611 (the "'611 Patent") (attached as Exhibit B) entitled "Electronic Mail System with RF Communications to Mobile Processors Originating From Outside of the Electronic Mail System and Method of Operation Thereof"; United States Patent No. 5,625,670 (the "'670 Patent") (attached as Exhibit C) entitled "Electronic Mail System With RF Communications to Mobile Processors"; United States Patent

No. 5,819,172 (the "'172 Patent") (attached as Exhibit D) entitled "Electronic Mail System with RF Communications to Mobile Radios"; United States Patent No. 6,067,451 (the "'451 Patent") (attached as Exhibit E) entitled "Electronic Mail System with RF Communications to Mobile Processors"; United States Patent No. 6,317,592 (the "'592 Patent") (attached as Exhibit F) entitled "Electronic Mail System with RF Communications to Mobile Processors"; U.S. Patent No. 5,479,472 (the "'472 Patent") (attached as Exhibit G) entitled "System for Interconnecting Electronic Mail Systems by RF Communications and Method of Operation Thereof"; and U.S. Patent No. 5,631,946 (the "'946 Patent") (attached as Exhibit H) entitled "System of Transferring Information from a RF Receiver to a Processor under Control of a Program Stored by the Processor and Method of Operation Thereof" (collectively, "the Campana Patents" or "the patents-in-suit").

### B.     The Parties

2.   Plaintiff NTP is a company organized and existing under the laws of the Commonwealth of Virginia, and has its business address at 16381 Locust Hill Drive, Rockville, Virginia  23146.

3.   Plaintiff NTP is the lawful assignee of all right, title and interest in and to the patents-in-suit.

4.   Defendant Microsoft is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 1 Microsoft Way, Redmond, Washington  98052.

5.   Defendant is a multinational computer software and hardware corporation.

6.   Upon information and belief, Defendant created the Windows Mobile operating system used on a number of phones capable of sending and receiving email communications via an RF transmission network, also known as "smartphones."

7.  Defendant markets the smartphones to consumers via the Microsoft website at http://www.microsoft.com/windowsmobile.  The website provides links to service providers where the smartphones can be purchased.

8.  Upon information and belief, HTC Corporation ("HTC") is a corporation organized and existing under the laws of the country of Taiwan, with its principal place of business at 23 Xinghua Road, Taoyuan 330, Taiwan, R.O.C.  It has been publicized that HTC has developed the majority of the Windows Mobile smartphones offered for sale in the United States at least as early as 2001.  (http://www.appleinsider.com/articles/09/02/18/microsoft_htc_has_made_80_of_all_windows_mobile_phones.html).

9.  Upon information and belief, Microsoft collaborated directly with HTC in designing and developing a variety of infringing Windows Mobile smartphones including, but not limited to, the Verizon HTC Imagio™ smartphone, the AT&T HTC PURE™ smartphone, the AT&T HTC Tilt™ 2 smartphone, the Verizon HTC Ozone™ smartphone, the Verizon HTC Touch Pro2 smartphone, the T-Mobile HTC Touch Pro2 smartphone, the Sprint HTC Snap smartphone, the Verizon HTC Touch Pro™ smartphone, the Sprint HTC Touch Pro™ smartphone, the Sprint HTC Touch Diamond™ smartphone, the Verizon Wireless HTC XV6800 smartphone, the Verizon Wireless HTC XV6900 smartphone, the U.S. Cellular HTC PPC6800 smartphone, the T-Mobile HTC Wing smartphone, and the T-Mobile HTC Dash.

10. Microsoft makes, uses, offers to sell, or sells software applications and electronic mail systems especially adapted for use with infringing smartphones manufactured and sold by third parties, including but not limited to Microsoft Exchange and Active Sync.  The infringing smartphones include, but are not limited to, the Verizon HTC Imagio™ smartphone, the Sprint Samsung Intrepid smartphone, the Samsung Omnia II smartphone, the AT&T HTC PURE™

smartphone, the AT&T HTC Tilt™ 2 smartphone, the AT&T Samsung Jack™ smartphone, the Verizon HTC Ozone™ smartphone, the Verizon HTC Touch Pro2 smartphone, the T-Mobile HTC Dash 3G smartphone, the T-Mobile HTC Touch Pro2 smartphone, the LG eXpo smartphone, the Sprint HTC Touch Pro2 smartphone, the AT&T Samsung Propel Pro smartphone, the AT&T Pantech Matrix Pro™ smartphone, the Sprint Palm Treo Pro smartphone, the Sprint HTC Snap smartphone, the Verizon Samsung Omnia™ smartphone, the AT&T LG Incite smartphone, the Verizon HTC Touch Pro™ smartphone, the Sprint HTC Touch Pro™ smartphone, the Verizon Samsung Saga™ smartphone, the Sprint HTC Touch Diamond™ smartphone, the Verizon Wireless HTC XV6800 smartphone, the Verizon Wireless HTC XV6900 smartphone, the Verizon Wireless Moto Q9c smartphone, the Sprint Samsung Ace™ smartphone, the Sprint MOTO Q 9c smartphone, the AT&T Palm Treo 750 smartphone, the HP iPAQ Glisten smartphone, the Pharos Traveler 117 smartphone, the Pharos Traveler 127 smartphone, the Pharos Traveler 137 smartphone, the Acer beTouch E100 smartphone, the Acer beTouch E200 smartphone, the Acer beTouch E101 smartphone, the Sony Ericsson Xperia™ X1a smartphone, the T-Mobile HTC Shadow smartphone, the Palm® Treo™ Pro smartphone, the HP iPAQ 900 Series Business Messenger smartphone, the i-mate Ultimate 9502 smartphone, the i-mate Ultimate 8502 smartphone, the i-mate Ultimate 8150 smartphone, the i-mate Ultimate 6150 smartphone, the Alltel Motorola Q9C smartphone, the i-mate JAMA 201 smartphone, the i-mate JAMA 101 smartphone, the U.S. Cellular HTC PPC6800 smartphone, the U.S. Cellular Motorola Q9C smartphone, the T-Mobile HTC Wing smartphone, and the T-Mobile HTC Dash smartphone.

### C.     Jurisdiction and Venue

11. This Court has jurisdiction over the subject matter of this patent infringement action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States.

12. This Court has personal jurisdiction over defendant Microsoft under Va. Code Ann. § 8.01-328.1 because Defendant has caused injury to Plaintiff in this District.  Moreover, this lawsuit arises out of the infringing acts committed by the Defendant in this District.

13. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400(b) and Local Rule 3(C) because, among other things, Defendant manufactures and distributes products that are offered for sale, sold, purchased, and used within the Richmond Division.  Defendant has also committed tortious acts of patent infringement in this Judicial District, rendering it subject to personal jurisdiction.

### D.     Factual Background

### 1.     Mr. Campana Invented Wireless Email.

14. Generally, the patents-in-suit relate to an innovative vision by a brilliant inventor, Thomas Campana, to integrate two distinct technologies: electronic mail and wireless networks. Mr. Campana invented unique technologies that enable a user to receive and view an email message from a wireless mobile device, without needing to connect to his wireline personal desktop computer.

15. In 1971, Mr. Campana founded ESA Telecom Systems, a wireless engineering consulting firm, and spent the next 20 years helping companies develop their paging networks. By 1990, Campana was recognized as a trusted provider of advanced wireless solutions in the telecommunications industry.  For example, from 1986 to 1991 Campana acted as Vice President of Engineering for Telefind Corporation.  At a time when pager networks were local operations

more akin to independent, regional radio stations than the giant service providers we have today, Campana was working with Telefind to develop one of the very first national networks capable of transmitting alphanumeric pages anywhere in the country. Telefind's paging technology was so sophisticated and ground breaking that it prompted a number of inquiries regarding potential acquisition by major telecommunications carriers both in the U.S. and abroad.

16. The visionary work of Mr. Campana occurred at a time when digital cellular telephone networks were a relatively new concept. At that time, there were no systems for sending emails to or from mobile devices. In fact, the concept of email itself was still a relatively new concept that only became popularized with the arrival of large online service providers such as America Online.

17. Realizing that email and wireless technologies were ripe for combination, in the summer of 1990, Mr. Campana began to develop a wireless email system that garnered the attention of AT&T. At AT&T's request, Mr. Campana built a working model that specifically interfaced with AT&T's newly designed line of portable computers. Mr. Campana and his employees demonstrated the system to AT&T in October, 1990 and then to AT&T's most valued customers at an industry tradeshow the following month. The demonstration consisted of sending an email through the AT&T email system to a portable AT&T Safari computer capable of sending and receiving emails wirelessly via a modem that had been specially programmed for that purpose. Based on this technology, Mr. Campana filed a series of applications with the PTO that eventually issued as the patents-in-suit.

18. Although Mr. Campana's company eventually failed, Mr. Campana's vanguard technology described and claimed in the patents-in-suit has been adopted worldwide. Moreover,

- 6 -

many current industry leaders have recognized the value of the technology and have licensed the patents-in-suit.

19. The '611 patent, entitled "Electronic Mail System With RF Communications To Mobile Processors Originating From Outside Of The Electronic Mail System And Method Of Operation Thereof," issued on August 1, 1995. The inventors of the '611 patent are Thomas J. Campana, Jr., Michael P. Ponschke, and Gary F. Thelen. The '611 patent is now, and has been at all times since its date of issue, valid and enforceable.

20. The '472 patent, entitled "System For Interconnecting Electronic Mail Systems By RF Communications And Method Of Operation Thereof," issued on December 26, 1995. The inventors of the '472 patent are Thomas J. Campana, Jr., Michael P. Ponschke, and Gary F. Thelen. The '472 patent is now, and has been at all times since its date of issue, valid and enforceable.

21. The '960 patent, entitled "Electronic Mail System With RF Communications To Mobile Processors And Method Of Operation Thereof," issued on July 25, 1995. The inventors of the '960 patent are Thomas J. Campana, Jr., Michael P. Ponschke, and Gary F. Thelen. The '960 patent is now, and has been at all times since its date of issue, valid and enforceable.

22. The '670 patent, entitled "Electronic Mail System With RF Communications To Mobile Processors," issued on April 29, 1997. The inventors of the '670 patent are Thomas J. Campana, Jr., Michael P. Ponschke, and Gary F. Thelen. The '670 patent is now, and has been at all times since its date of issue, valid and enforceable.

23. The '172 patent, entitled "Electronic Mail System With RF Communications To Mobile Radios," issued on October 6, 1998. The inventors of the '172 patent are Thomas J.

Campana, Jr., Michael P. Ponschke, and Gary F. Thelen.  The '172 patent is now, and has been at all times since its date of issue, valid and enforceable.

24. The '451 patent, entitled "Electronic Mail System With RF Communications To Mobile Processors," issued on May 23, 2000.  The inventors of the '451 patent are Thomas J. Campana, Jr., Michael P. Ponschke, and Gary F. Thelen.  The '451 patent is now, and has been at all times since its date of issue, valid and enforceable.

25. The '592 patent, entitled "Electronic Mail System With RF Communications To Mobile Processors," issued on November 13, 2001.  The inventors of the '592 patent are Thomas J. Campana, Jr., Michael P. Ponschke, and Gary F. Thelen.  The '592 patent is now, and has been at all times since its date of issue, valid and enforceable.

26. The '946 patent, entitled "System For Transferring Information From a RF Receiver to a Processor Under Control of a Program Stored by the Processor and Method of Operation Thereof," issued on May 20, 1997.  The inventors of the '946 patent are Thomas J. Campana, Jr., Michael P. Ponschke and Gary F. Thelen.  The '946 patent is now, and has been at all times since its date of issue, valid and enforceable.

## 2.    NTP Won Prior Litigation Involving the Patents-in-Suit.

27. Five of the patents-in-suit were the subject of a widely publicized patent infringement litigation filed in this Court against Research-in-Motion, Ltd. on November 13, 2001, Civil Action No. 3:01CV767 (the "RIM Action").

28. In the course of the RIM Action, RIM extensively litigated the validity and enforceability of the five patents at issue, as well as the issue of RIM's infringement.  The issues of infringement and validity were tried in a thirteen-day jury trial in November 2002 before the Honorable James R. Spencer, District Judge.

29. The jury returned a verdict finding that RIM willfully infringed all of the asserted claims of the patents under theories of direct infringement, induced infringement and contributory infringement by making and selling Blackberry handsets, producing and selling email software, and operating the Blackberry system. The jury also found the inventions of the asserted claims were novel and non-obvious to one of ordinary skill in the art by finding that the claims were not anticipated or rendered obvious under §§ 102 and/or 103 of the Patent Act.

30. The Court awarded enhanced damages and attorney fees to NTP and ordered RIM to pay a 5.7% royalty rate on all sales of the infringing products. The Court also awarded NTP a permanent injunction. A copy of the Court's decision is attached as Exhibit I.

31. RIM unsuccessfully appealed to the United States Court of Appeals for the Federal Circuit ("Federal Circuit"), which affirmed the validity of the patents. Infringement of the system and apparatus claims was affirmed for those claims that did not contain an "originating processor" limitation, the construction of which was altered by the Federal Circuit , and infringement of the method claims was reversed because RIM's "Relay" component was in Canada, not the US. A copy of the Federal Circuit's opinion is attached as Exhibit J.

32. After losing most of its arguments before the Federal Circuit and threatened by the notion that it would be enjoined from selling its lucrative Blackberry® products, RIM agreed to settle the lawsuit in March 2006 by licensing the right to practice NTP's cutting edge technology embodied by the claims of five of the patents-in-suit for the licensing fee of $612.5 million dollars.

33. Shortly after the widespread publication of the licensing fee paid by RIM, on September 20, 2006, Oren Tavory filed a Complaint against NTP, Inc., styled *Oren Tavory v. NTP, Inc.*, Civil Action No. 3:06CV628 (E.D. Va.) (the "Tavory Action") seeking to be named

as a co-inventor of seven of the eight Campana Patents at issue here and asserting claims for copyright infringement and unjust enrichment. The action was transferred to the Richmond Division and assigned to the Honorable James R. Spencer, District Judge. The Court dismissed the unjust enrichment claim on December 26, 2006, and granted NTP's motion for summary judgment dismissing the remaining claims on July 17, 2007. Mr. Tavory filed a notice of appeal on August 16, 2007. In a decision issued on October 27, 2008 (2007 WL 2965048), the U.S. Court of Appeals for the Federal Circuit affirmed the district court's judgment in favor of NTP.

34. Currently pending before this Court are the following patent infringement actions ("the related actions") filed by NTP:

(1)     *NTP, Inc. v. Palm, Inc.* ("Palm"), filed on November 6, 2006 as Civil Action No. 2:06-CV-627 and reassigned on December 20, 2006 as Civil Action No. 3:06-CV-836;

(2)     *NTP, Inc. v. T-Mobile USA, Inc.* ("T-Mobile"), filed on September 7, 2007, Civil Action No. 3:07-CV-548;

(3)     *NTP, Inc. v. Cellco Partnership d/b/a Verizon Wireless* ("Verizon"), filed on September 7, 2007, Civil Action No. 3:07-CV-549;

(4)     *NTP, Inc. v. AT&T Mobility, LLC* ("AT&T"), filed on September 7, 2007, Civil Action No. 3:07-CV-550;

(5)     *NTP, Inc. v. Sprint Nextel Corp.* ("Sprint"), filed on September 7, 2007, Civil Action No. 3:07-CV-551; and

(6)     *NTP, Inc. v. Alltel Corp.* ("Alltel"), filed on May 19, 2008, Civil Action No. 3:08CV299.

35. Seven of the patents at issue here are also at issue in the Palm Action. All the patents at issue here are also at issue in each of the actions filed against T-Mobile, Verizon, AT&T, Sprint, and Alltel.

36. The related actions were stayed pending completion of the PTO reexamination proceedings.

### 3.    67 Claims Already Confirmed/Allowed After Reexamination.

37. After the jury verdict in the RIM action, the United States Patent and Trademark Office ("PTO") initiated reexamination of the '670, '172, '451, '592, '472 and '946 Patents in December 2002, and granted RIM's petitions for reexamination of the '960 and '611 Patents in April 2003 and September 2003 respectively. RIM subsequently filed requests for reexamination of the other patents-in-suit.

38. All of the reexaminations eventually were terminated or went to appeal. The Appeals Board has rendered decisions for each of the reexaminations. The Board had confirmed or allowed 67 of NTP's patent claims after reexamination. The following chart summarizes the Board's appeal decisions of the reexaminations of the patents-in-suit:

| Patent No. | Reexam No. | Status | Claims Confirmed/Allowed by the Board |
|---|---|---|---|
| 5,436,960 | 90/006,533 | Affirmed in part | 4, 6, 11, 15, 17, 21, 23, 28, 32, 34, 38, 40, 45, 49, 51, 55, 57, 62, 67, 79 |
| | 90/006,675 | | |
| | 90/007,731 | | |
| 5,438,611 | 90/006,676 | Affirmed | |
| 5,479,472 | 90/006,677 | Affirmed in part | 10, 12, 14, 16, 18, 20, 29, 31, 33, 35, 37 |
| 5,625,670 | 90/006,491 | Affirmed in part | 567-570 |
| | 90/006,678 | | |
| | 90/007,723 | | |
| 5,631,946 | 90/006,492 | Affirmed in part | 289, 296-305, 307-309, 314-329, 333 |
| | 90/006,679 | | |

| 5,819,172 | 90/006,493 | Affirmed | |
| | 90/006,680 | | |
| | 90/007,735 | | |
| 6,067,451 | 90/006,494 | Affirmed | |
| | 90/006,681 | | |
| | 90/007,726 | | |
| 6,317,592 | 90/006,495 | Affirmed | |

39. After years of reexamination proceedings, the validity of claims 15, 32, and 34 of the '960 patent, which RIM was found to infringe at trial, have been upheld.

40. NTP has appealed the Board's decisions to the United States Court of Appeals for the Federal Circuit, as to all of NTP's patent claims that the Board did not already confirm. The appeal is pending.

### E.    Defendant's Infringement and Notice Thereof

41. Defendant has been, currently is, and continues to infringe one or more claims of the patents-in-suit by including making, using, selling, offering to sell, and/or importing into the United States one or more services and products that infringe the patents-in-suit or that are specially adapted for use in infringing products. For example, Microsoft (1) makes infringing devices that are imported into the Richmond Division, offered for sale and sold to customers in the Richmond Division for use in the Richmond Division; (2) directly markets infringing devices to customers, including customers in the Richmond Division, via the Defendant's online Web sites, including, but not limited, to http://www.microsoft.com/windowsmobile/en-us/default.mspx; (3) knowingly communicates with customers and provides instructions, support and services including customers located in the Richmond Division, through telephone and online contacts for technical support of the infringing use of products and services sold by the Defendant through Defendant's online Web sites, including, but not limited to,

- 12 -

http://www.microsoft.com, and through a toll-free helpline at (800) 936-5700; (4) conducts

marketing, promotion, and advertising activities for infringing products and services within the

Richmond Division and elsewhere in the United States, such activities thereby including offers to

sell directed at customers in the Richmond Division; and (5) providing instructions, support and

services to customers who are infringing the patents-in-suit, including customers in the

Richmond Division.

42. The infringing Microsoft products and services include, by way of example and

without limitation, the Microsoft Windows Mobile operating system for smartphones, Microsoft

Exchange, Active Sync, other related software applications, and services. For example,

Microsoft at least sells and offers to sell the Windows Mobile operating system, together with

email applications (such as Microsoft Exchange and Active Sync) and telecommunication

services, which constitute electronic mail systems in violation of the claims of the patents-in-suit.

43. Microsoft indirectly infringes one or more of the claims of the patents-in-suit by

actively inducing others to make, use, sell, offer for sale and/or import into the United States

products, methods, processes, services and/or systems that directly infringe one or more claims

of the patents-in-suit, such as but not limited to the Verizon HTC Imagio™ smartphone, the

Sprint Samsung Intrepid smartphone, the Samsung Omnia II smartphone, the AT&T HTC

PURE™ smartphone, the AT&T HTC Tilt™ 2 smartphone, the AT&T Samsung Jack™

smartphone, the Verizon HTC Ozone™ smartphone, the Verizon HTC Touch Pro2 smartphone,

the T-Mobile HTC Dash 3G smartphone, the T-Mobile HTC Touch Pro2 smartphone, the LG

eXpo smartphone, the Sprint HTC Touch Pro2 smartphone, the AT&T Samsung Propel Pro

smartphone, the AT&T Pantech Matrix Pro™ smartphone, the Sprint Palm Treo Pro

smartphone, the Sprint HTC Snap smartphone, the Verizon Samsung Omnia™ smartphone, the

- 13 -

AT&T LG Incite smartphone, the Verizon HTC Touch Pro™ smartphone, the Sprint HTC Touch Pro™ smartphone, the Verizon Samsung Saga™ smartphone, the Sprint HTC Touch Diamond™ smartphone, the Verizon Wireless HTC XV6800 smartphone, the Verizon Wireless HTC XV6900 smartphone, the Verizon Wireless Moto Q9c smartphone, the Sprint Samsung Ace™ smartphone, the Sprint MOTO Q 9c smartphone, the AT&T Palm Treo 750 smartphone, the HP iPAQ Glisten smartphone, the Pharos Traveler 117 smartphone, the Pharos Traveler 127 smartphone, the Pharos Traveler 137 smartphone, the Acer beTouch E100 smartphone, the Acer beTouch E200 smartphone, the Acer beTouch E101 smartphone, the Sony Ericsson Xperia™ X1a smartphone, the T-Mobile HTC Shadow smartphone, the Palm® Treo™ Pro smartphone, the HP iPAQ 900 Series Business Messenger smartphone, the i-mate Ultimate 9502 smartphone, the i-mate Ultimate 8502 smartphone, the i-mate Ultimate 8150 smartphone, the i-mate Ultimate 6150 smartphone, the Alltel Motorola Q9C smartphone, the i-mate JAMA 201 smartphone, the i-mate JAMA 101 smartphone, the U.S. Cellular HTC PPC6800 smartphone, the U.S. Cellular Motorola Q9C smartphone, the T-Mobile HTC Wing smartphone, and the T-Mobile HTC Dash smartphone.

44. Microsoft indirectly infringes one or more of the claims of the patents-in-suit by knowingly making, using, offering to sell, selling or importing into the United States one or more material components or especially adapted components of the claimed invention of the patents-in-suit for use in practicing the patented invention. By way of example, upon information and belief, Microsoft makes, uses, sells, offers to sell, and/or imports, an electronic mail system and application programs specially adapted for use in conjunction with the Windows Mobile operating system for smartphones, such as but not limited to the Verizon HTC Imagio™ smartphone, the Sprint Samsung Intrepid smartphone, the Samsung Omnia II smartphone, the

AT&T HTC PURE™ smartphone, the AT&T HTC Tilt™ 2 smartphone, the AT&T Samsung

Jack™ smartphone, the Verizon HTC Ozone™ smartphone, the Verizon HTC Touch Pro2

smartphone, the T-Mobile HTC Dash 3G smartphone, the T-Mobile HTC Touch Pro2

smartphone, the LG eXpo smartphone, the Sprint HTC Touch Pro2 smartphone, the AT&T

Samsung Propel Pro smartphone, the AT&T Pantech Matrix Pro™ smartphone, the Sprint Palm

Treo Pro smartphone, the Sprint HTC Snap smartphone, the Verizon Samsung Omnia™

smartphone, the AT&T LG Incite smartphone, the Verizon HTC Touch Pro™ smartphone, the

Sprint HTC Touch Pro™ smartphone, the Verizon Samsung Saga™ smartphone, the Sprint HTC

Touch Diamond™ smartphone, the Verizon Wireless HTC XV6800 smartphone, the Verizon

Wireless HTC XV6900 smartphone, the Verizon Wireless Moto Q9c smartphone, the Sprint

Samsung Ace™ smartphone, the Sprint MOTO Q 9c smartphone, the AT&T Palm Treo 750

smartphone, the HP iPAQ Glisten smartphone, the Pharos Traveler 117 smartphone, the Pharos

Traveler 127 smartphone, the Pharos Traveler 137 smartphone, the Acer beTouch E100

smartphone, the Acer beTouch E200 smartphone, the Acer beTouch E101 smartphone, the Sony

Ericsson Xperia™ X1a smartphone, the T-Mobile HTC Shadow smartphone, the Palm® Treo™

Pro smartphone, the HP iPAQ 900 Series Business Messenger smartphone, the i-mate Ultimate

9502 smartphone, the i-mate Ultimate 8502 smartphone, the i-mate Ultimate 8150 smartphone,

the i-mate Ultimate 6150 smartphone, the Alltel Motorola Q9C smartphone, the i-mate JAMA

201 smartphone, the i-mate JAMA 101 smartphone, the U.S. Cellular HTC PPC6800

smartphone, the U.S. Cellular Motorola Q9C smartphone, the T-Mobile HTC Wing smartphone,

and the T-Mobile HTC Dash smartphone.

     45. Upon information and belief, Defendant has continued to infringe the patents-in-suit,

despite its knowledge of them and in reckless disregard for NTP's patent rights. On information

60956129_7

and belief, Defendant has direct knowledge from press reports and independent investigation of the merits underlying NTP's patent rights from its knowledge of the disposition of NTP's patent infringement suit against RIM.  Further, Defendant is aware of the status of the pending reexaminations as such information is publicly available.  Defendant is aware that the patents-in-suit are presumed valid and remain enforceable during the pendency of the reexaminations.  And, on information and belief, Defendant is aware through published press reports that the reexaminations were instituted because of political pressure on the PTO and are without merit.  Despite its knowledge of the disposition of NTP's patent infringement suit against RIM and the fact that RIM took a license to the patents-in-suit, Defendant chose to market and promote its smartphone devices and, in particular, the related Email functionalities in direct competition with RIM BlackBerry devices which were found to infringe upon, and are currently licensed under, the patents-in-suit.  On information and belief, Defendant is also aware of the patent infringement suits that NTP filed against T-Mobile, Verizon, and AT&T respectively on September 7, 2007, Civil Action Nos. 3:07CV548-550, which involve the same patents-in-suit as asserted in this Complaint.  However, Defendant continues to market, sell, and offer to sell its infringing smartphone devices through these wireless carriers.  Defendant's continued infringement with its present knowledge of NTP's patent rights and their relevance to Defendant's operations is reckless and willful.

46. NTP has been irreparably harmed by the Defendant's infringement of its valuable patent rights.  Moreover, Defendant's unauthorized, infringing use of NTP's patented systems and methods has threatened the value of this intellectual property because Defendant's conduct results in NTP's loss of its lawful patent rights to exclude others from making, using, selling, offering to sell and/or importing the patented inventions.

60956129_7

47. Defendant's disregard for NTP's property rights similarly threatens NTP's relationships with its licensees and potential licensees of this intellectual property. Defendant will derive a competitive advantage over any of NTP's existing and future licensees from using NTP's patented technology without paying compensation for such use. Accordingly, unless and until Defendant's continued acts of infringement are enjoined, NTP will suffer further irreparable harm for which there is no adequate remedy at law.

## COUNT I

### (Infringement of United States Patent No. 5,436,960)

48. Paragraphs 1-47 are incorporated by reference as if fully restated herein.

49. Plaintiff NTP is the assignee and lawful owner of all right, title and interest in and to the '960 Patent.

50. Defendant makes, uses, sells, offers to sell and/or imports into the United States for subsequent sale or use products, services, methods or processes, or which employ systems, components and/or steps that make use of systems or processes that infringe one or more claims of the '960 Patent directly or indirectly.

51. Defendant has been infringing and continues to infringe one or more claims of the '960 Patent through the aforesaid acts, and will continue to do so unless enjoined by this Court. Defendant's wrongful conduct has caused NTP to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering to sell and importing the patented inventions.

52. NTP is entitled to recover damages adequate to compensate for the infringement and enhanced damages due to Defendant's willful infringement.

## COUNT II

### (Infringement of United States Patent No. 5,438,611)

53. Paragraphs 1-47 are incorporated by reference as if fully restated herein.

54. Plaintiff NTP is the assignee and lawful owner of all right, title and interest in and to the '611 Patent.

55. Defendant makes, uses, sells and offers to sell, and/or imports into the United States for subsequent sale or use products, services, methods or processes that infringe, or which employ systems components and/or steps that make use of systems or processors that infringe, one or more claims of the '611 Patent directly and/or indirectly.

56. Defendant has been infringing and continues to infringe one or more claims of the '611 Patent through the aforesaid acts, and will continue to do so unless enjoined by this Court. Defendant's wrongful conduct has caused NTP to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering to sell and importing the patented inventions.

57. NTP is entitled to recover damages adequate to compensate for the infringement and enhanced damages due to Defendant's willful infringement.

## COUNT III

### (Infringement of United States Patent No. 5,625,670)

58. Paragraphs 1-47 are incorporated by reference as if fully restated herein.

59. Plaintiff NTP is the assignee and lawful owner of all right, title and interest in and to the '670 Patent.

60. Defendant makes, uses, sells and offers to sell and/or imports into the United States for subsequent sale or use products, services, methods or processes that infringe, or which

employ systems, components and/or steps that make use of systems or processes that infringe one or more of the claims of the '670 Patent directly or indirectly.

61. Defendant has been infringing and continues to infringe one or more claims of the '670 Patent through the aforesaid acts, and will continue to do so unless enjoined by this Court. Defendant's wrongful conduct has caused NTP to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering to sell and importing the patented inventions.  NTP is entitled to recover damages adequate to compensate for the infringement.

62. NTP is entitled to recover damages adequate to compensate for the infringement and enhanced damages due to Defendant's willful infringement.

## COUNT IV

### (Infringement of United States Patent No. 5,819,172)

63. Paragraphs 1-47 are incorporated by reference as if fully restated herein.

64. Plaintiff NTP is the assignee and lawful owner of all right, title and interest in and to the '172 Patent.

65. Defendant makes, uses, sells, and offers to sell and/or imports into the United States for subsequent sale or use, products, services, methods or processes that infringe, or which employ systems, components and/or steps that make use of systems or processes that infringe one or more claims of the '172 Patent directly or indirectly.

66. Defendant has been infringing and continues to infringe one or more claims of the '172 Patent through the aforesaid acts, and will continue to do so unless enjoined by this Court. Defendant's wrongful conduct has caused NTP to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering to sale and importing the patent inventions.

- 19 -

67. NTP is entitled to recover damages adequate to compensate for the infringement and enhanced damages due to Defendant's willful infringement.

## COUNT V

### (Infringement of United States Patent No. 6,067,451)

68. Paragraphs 1-47 are incorporated by reference as if fully restated herein.

69. Plaintiff NTP is the assignee and lawful owner of all right, title and interest in and to the '451 Patent.

70. Defendant makes, uses, sells and offers to sell and/or imports into the United States for subsequent sale or use products, services, methods or processes that infringe, or which employ systems, components, and/or steps that make use of systems or processes that infringe, directly and/or indirectly, one or more claims of the '451 Patent directly or indirectly.

71. Defendant has been infringing and continues to infringe one or more claims of the '451 Patent through the aforesaid acts, and will continue to do so unless enjoined by this Court. Defendant's wrongful conduct has caused NTP to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering to sell and importing the patented inventions.

72. NTP is entitled to recover damages adequate to compensate for the infringement and enhanced damages due to Defendant's willful infringement.

## COUNT VI

### (Infringement of United States Patent No. 6,317,592)

73. Paragraphs 1-47 are incorporated by reference as if fully restated herein.

74. Plaintiff NTP is the assignee and lawful owner of all right, title and interest in and to the '592 Patent.

- 20 -

75. Defendant makes, uses, sells, and offers to sell and/or imports into the United States for subsequent sale or use products, services, methods or processes that infringe, or which employ systems, components and/or steps that make use of systems or processes that infringe one or more claims of the '592 Patent directly or indirectly.

76. Defendant has been infringing and continues to infringe one or more of the claims of the '592 Patent through the aforesaid acts, and will continue to do so unless enjoined by this Court. Defendant's wrongful conduct has caused NTP to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering to sell and importing the patented inventions.

77. NTP is entitled to recover damages adequate to compensate for the infringement and enhanced damages due to Defendant's willful infringement.

## COUNT VII

### (Infringement of United States Patent No. 5,479,472)

78. Paragraphs 1-47 are incorporated by reference as if fully restated herein.

79. Plaintiff NTP is the assignee and lawful owner of all right, title, and interest in and to the '472 Patent.

80. Defendant makes, uses, sells, and offers to sell and/or imports into the United States for subsequent sale or use products, services, methods or processes that infringe, or which employ systems, components and/or steps that make use of systems or processes that infringe one or more claims of the '472 Patent directly or indirectly.

81. Defendant has been infringing and continues to infringe one or more claims of the '472 Patent through the aforesaid act, and will continue to do so unless enjoined by this Court. Defendant's wrongful conduct has caused NTP to suffer irreparable harm resulting from the loss

of its lawful patent rights to exclude others from making, using, selling, offering to sell and importing the patented invention.

82. NTP is entitled to recover damages adequate to compensate for the infringement and enhanced damages due to Defendant's willful infringement.

## COUNT VIII

### (Infringement of United States Patent No. 5,631,946)

83. Paragraphs 1-47 are incorporated by reference as if fully restated herein.

84. Plaintiff NTP is the assignee and lawful owner of all right, title, and interest in and to the '946 Patent.

85. Defendant makes, uses, sells, and offers to sell and/or imports into the United States for subsequent sale or use products, services, methods or processes that infringe, or which employ systems, components and/or steps that make use of systems or processes that infringe one or more claims of the '946 Patent directly or indirectly.

86. Defendant has been infringing and continues to infringe one or more claims of the '946 Patent through the aforesaid act, and will continue to do so unless enjoined by this Court. Defendant's wrongful conduct has caused NTP to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering to sell and importing the patented invention.

87. NTP is entitled to recover damages adequate to compensate for the infringement and enhanced damages due to Defendant's willful infringement.

### PRAYER FOR RELIEF

WHEREFORE, NTP prays for judgment against Defendant, and that this Court grant NTP the following relief:

60956129_7

A.      Adjudging and decreeing that the '960 Patent is valid and enforceable against Defendant, that the '611 Patent is valid and enforceable against Defendant, that the '670 Patent is valid and enforceable against Defendant, that the '172 Patent is valid and enforceable against Defendant, that the '592 Patent is valid and enforceable against Defendant, that the '451 Patent is valid and enforceable against Defendant, that the '472 Patent is valid and enforceable against the Defendant, and that the '946 Patent is valid and enforceable against the Defendant;

B.      Adjudging and decreeing that Defendant has infringed, directly and indirectly, the '960 Patent, the '611 Patent, the '670 Patent, the '172 Patent, the '592 Patent, the '451 Patent, the '472 Patent and the '946 Patent;

C.      Permanently enjoining Defendant, and its parents, subsidiaries, affiliates, successors and assigns, and each of its officers, directors, employees, representatives, agents and attorneys, and all persons acting in concert or active participation with or on its behalf, or within its control, from making, using, selling, offering to sale, importing, or advertising products and/or services and/or employing systems, hardware, software and/or components and/or making use of such systems or processes that infringe any of the claims of the patents-in-suit, or otherwise engaging in acts of infringement of the patents-in-suit, all as alleged herein, or alternatively if no injunction is awarded, awarding treble the royalty awarded to NTP at trial for any infringement continuing past the date of verdict until the expiration of the latest patent found to be infringed;

D.      Ordering an accounting, including a post-verdict accounting, to determine the damages to be awarded to NTP as a result of Defendant's infringement;

- 23 -

E.      Pursuant to 35 U.S.C. § 284, entering an award to NTP of such damages as it shall prove at trial against Defendant that are adequate to compensate NTP for said infringement, said damages to be no less than a reasonable royalty together with interest and costs;

F.      Assessing pre-judgment and post-judgment interest and costs against Defendant, together with an award of such interest and costs, in accordance with 35 U.S.C. § 284;

G.      Declaring this case to be exceptional and direct Defendant to pay NTP's attorneys' fees incurred in connection with this lawsuit pursuant to 35 U.S.C. § 285;

H.      Adjudging the infringement to be willful and awarding enhanced damages and attorneys' fees due to Defendant's willful infringement; and

I.      Granting to NTP such other, further, and different relief as may be just and proper.

## JURY DEMAND

NTP demands a trial by jury of all matters to which it is entitled to trial by jury.

Respectfully submitted,
NTP, Inc. by Counsel

July 8, 2010

_____

Craig T. Merritt (VSB #20281)
E-mail: cmerritt@cblaw.com
R. Braxton Hill, IV (VSB #41539)
E-mail: bhill@cblaw.com
Henry I. Willett, III (VSB #44655)
E-mail: hwillett@cblaw.com
Nichole Buck Vanderslice (VSB #42637)
E-mail: nvanderslice@cblaw.com
CHRISTIAN & BARTON, LLP
909 East Main Street, Suite 1200
Richmond, VA 23219-3095
Tel: 804-697-4128
Fax: 804-697-6128

- 24 -

Peter A. Sullivan (*pro hac vice*)
**HUGHES HUBBARD & REED LLP**
One Battery Park Plaza
New York, NY  10004
Telephone:  (212) 837-6000
Facsimile:  (212) 422-4726

Gregory M. Williams (*pro hac vice*)
**HUGHES HUBBARD & REED LLP**
1775 I Street, N.W.
Suite 600
Washington, DC  20006
Telephone:  (202) 721-4600
Facsimile:  (202) 422-4646

Counsel for Plaintiff NTP, Inc.

60956129_7